**IN THE UNITED STATES DISTRICT COURT
FOR MARYLAND
GREENBELT DIVISION**

| | | |
|---|---|---|
| **Shanon Hayes** | ) | |
| **3410 Maple Bluff Lane** | ) | |
| **Bowie, MD 20715** | ) | |
|     Plaintiff, | ) | Case No: 19-cv-02801 |
| | ) | |
|   vs. | ) | <u>Jury Demand</u> |
| | ) | For Violations of Section 1981, Title VII, the |
| **Knight FM** | ) | American Disabilities Act Amendments Act of |
| **5360 Hampton Place** | | 2008 (ADAAA), the Family Medical Leave |
| **Saginaw, MI 48604 &** | | Act (FMLA), the Maryland Wage Payment |
| **Transurban** | | and Collection Law (MWPCL) & for Breach |
| **7900 West Park Drive** | | of Contract. |
| **McLean, VA 22102** | | |
|     **Defendants** | | |

Plaintiff Shanon Hayes by and through her undersigned counsel Dhali PLLC files this complaint for race discrimination, sex discrimination, disability discrimination and retaliation under Section 1981, Title VII, 42 U.S.C §2000 *et seq*., and the American Disabilities Act Amendments Act of 2008 (ADAAA), against the Defendants Knight Facilities Management (Knight FM) and Transurban – the joint employers of Hayes. Hayes also files her complaint for retaliation under the Family Medical Leave Act (FMLA), for unpaid overtime wages under the Maryland Wage Payment and Collection Law (MWPCL) Md. Code Ann., Lab. & Empl. § 3-501 *et. Seq,*. and for breach of contract, against the Defendants.

Hayes is a Black female who was employed by the Defendants from 2018 to May 24, 2019. She was a non-exempt hourly employee. While here, she experienced sex and race discrimination, when the Defendants called her an "angry black women." Hayes also alleges that because Transurban is an Australian company, she had to frequently communicate with them in the evenings about work assignments. Hayes avers that she is owed unpaid overtime from the

Defendants. When on May 10, 2019, she sought medical leave by visiting urgent care, she was told on May 24, 2019, that she was being terminated because she had visited the doctor on May 10, 2019.

Consequently, an action for violation of the laws now follows.

## PART I. PARTIES.

1. The Plaintiff Shanon Hayes is an African-American female who was employed by the Defendants Knight FM and Transurban as a Facilities Manager from 2018 to May 24, 2019. Hayes is an employee under 42 U.S.C. § 2000(e) *et seq* and Md. Code Ann., Lab. & Empl. § 3-501 *et. seq*. Hayes is also a disabled individual under 42 U.S.C. §12101 *et.seq.,* of the ADAAA.  She is also an employee under 29 U.S.C § 2611 *et.seq.,* of the FMLA.

2. Knight Facilities Management (Knight FM) is a global facilities management company[1] who provide a wide array of maintenance services, from buildings to grounds to equipment. Knight FM is an employer of Hayes under 42 U.S.C. § 2000(e) *et seq* and Md. Code Ann., Lab. & Empl. § 3-501 *et. seq*. Knight FM is also an employer under 42 U.S.C. § 12111, and 42 U.S.C. §12112 of the ADAAA.  Knight FM is also an employer under 29 U.S.C § 2611 *et.seq.,* of the FMLA.

3. Transurban is an Australian owned company and operates toll roads in Melbourne, Sydney and Brisbane, Australia, as well as in Greater Washington, United States and Montreal, Canada.[2] Transurban is an employer of Hayes under 42 U.S.C. § 2000(e) *et seq* and Md. Code Ann., Lab. & Empl. § 3-501 *et. seq*. Transurban is also an employer under

---

[1] http://knightfm.com/ (last visited 9/23/2019)
[2] https://www.Transurban.com/about-us (last visited 9/23/2019)

42 U.S.C. § 12111, and 42 U.S.C. §12112 of the ADAAA. They are also an employer under 29 U.S.C § 2611 *et.seq.,* of the FMLA.

## PART II. JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over her Section 1981 and Title VII claims under 42 U.S.C §2000 *et seq*., over her American Disabilities Act Amendments Act of 2008 (ADAAA) claims under 42 U.S.C. §12101 *et.seq.,* and has supplemental jurisdiction over her Maryland Wage Payment and Collection Law (MWPCL) and breach of contract claims under 28 U.S.C §1367. This Court has jurisdiction over her FMLA claim under 29 U.S.C. § 2611 *et.seq.*

5. Venue is proper in Maryland because the Plaintiff is a resident of Maryland, and also worked in Bowie, Maryland while employed by the Defendants.

## PART III. EXHAUSATION OF ADMINISTRATIVE REMEDIES

6. Hayes exhausted her administrative remedies under Title VII and the ADAAA by filing her charge with the U.S. Equal Employment Opportunity Commission (EEOC) on May 30, 2019, and her amended charge on June 7, 2019, alleging race, sex and disability discrimination, along with retaliation.

7. On June 25, 2019, the EEOC issued its Right to Sue. It was received by Hayes on or about July 28, 2019. A complaint was timely filed within 90 days on Monday September 23, 2019.

8. There are no exhaustion requirements under Section 1981, the MWPCL or the FMLA.

**PART IV. STATEMENT OF FACTS**

9. Transurban is an Australian company and operates toll roads in Melbourne, Sydney and Brisbane, Australia, as well as in Greater Washington, United States and Montreal, Canada.[3]

10. Hayes is a Black female who was employed by Transurban and Knight FM as a Facilities Manager from 2018 to May 24, 2019.

11. Hayes' October 5, 2018, offer letter, stats that she is an "employee at will" and is a non-exempt employee with an hourly wage of $34.61 paid on a bi-weekly basis. She earned approximately $72,000 per year.

12. Hayes' hourly wage is recorded on novatime.com.[4] Her supervisors have access to novatime.com and can change or edit Hayes' hours.

13. Hayes' October 5, 2018, offer letter also states that she will be working for Knight FM's customer, "Transurban." Her offer letter then states that she will have 3 weeks of vacation, along with holidays that are observed by Transurban.

14. Upon information and belief Knight FM and a Transurban have a contract for services with each other.

15. Both Knight FM and Transurban controlled the employee in that it dictated her work hours, individuals that she needed to report to, and in the case of Transurban, also provided Hayes with computers and other work equipment. To that end, Hayes would also frequently communicate with Transurban's corporate officers and employees in Australia.

---

[3] https://www.Transurban.com/about-us (last visited 9/23/2019)
[4] https://www.novatime.com/ (last visited 9/23/2019)

16. Hayes reported to Santi Hill (Black male), the Senior Director of Business Development and Client Solutions at Knight FM.

17. Sometime on November 28, 2018, Hill told Hayes that she had a "warm booty."

18. Post November 2018, Hill would also randomly call Hayes, sometimes as late as 12 am, wanting to talk to Hayes on non-work related matters. When Hill initially made these calls around 11 pm – 12 am, Hayes would answer these calls, thinking that Hill was calling to discuss work assignments. Instead she learnt that Hill would be calling her at night for no particular reason, other than to inform her that, "today is my drunk day. I am having a beer and I am passed out in my car."

19. In December 2018, Hill informed Hayes, that she is <u>never</u> to report anything to Human Resources (HR), because "they [HR] work for me, they do what I tell them to do."

20. On or about February 8, 2019, Hayes had a meeting with Hill and Oya Gilbert (Black male). Gilbert was the Facilities Coordinator for Knight FM. Hayes expressed to Hill about Gilbert's work ethics, and that he (Gilbert) was not meeting his deadlines, frequently arriving late to work, and that Gilbert was also not answering his phone calls.

21. Hill informs Hayes that Gilbert had worked for him (Hill) for the past 3 years and that she needs to work with Gilbert. Hill also informed Hayes that she (Hayes) can be too critical, and that she was employed by the Defendants only because of him (Hill).

22. On February 9, 2019, Hayes called her colleague at Transurban, Katherine Jefferson (Black female) who informed Hayes that Hill should not have spoken to her in that way, and that Jefferson will be discussing this matter with Sean Mallipudi, Sr. Director for Procurement at Transurban.

23. Mallipudi inturn informed Hayes that after speaking with Debbie Rosenberg, the HR Director/ Vice President for Transurban (White Female) he was told that because she (Hayes) is a third party vendor, there is nothing they [Transurban] can do."

24. In March 2019, Hayes denied Manal Michael (Arabic/Caucasian Female) a receptionist at Knight FM, her request to meet with her doctor.

25. Hayes had denied the request for medical leave, because Hayes was short staffed, on account that another employee Ashley Foster, was already on two weeks medical leave.

26. Foster was also a receptionist at Knight FM.

27. Hayes then received a reprimand from Leena Schriber (White Female) an employee at Transurban who informed Hayes that she should be ashamed for denying the leave, and "heaven forbid if your daughter has cancer."

28. The following week, Michael informed Hill that she never liked Hayes, because Hayes never smiles. In a subsequent March 26, 2019, meeting with Mallipudi on this incident, Mallipudi informed Hayes to smooth things over, and that he did not want things to get to a point, where she is not liked by the people at Tyson's Corner, Virginia.

29. Most of the employees at Tyson's Corner, Virginia are Caucasian.

30. On March 28, 2019, Hayes again met with Mallipudi to discuss the denial of Michael's leave. Hill also attended this meeting. Hill informed Hayes that, "*Michael was untouchable and that she* (Hayes) *looks like an angry black woman who is not liked by the folks at Tyson's corner.*"

31. Soon after this meeting, Mallipudi also started ignoring Hayes' email and text messages concerning work assignments.

32. On April 1, 2019, Hayes asked Hill for a day off to spend time with her daughter.

33. Hill informed Hayes that no one can take time off, and that only Michael can take time off.

34. On May 10, 2019, Hayes sent Mallipudi a text message around 1pm, informing him that she was not feeling well and that she needed to visit urgent care. Hayes was suffering from an upper respiratory infection, and a double ear infection. These disabilities made it difficult for her to breath, hear and concentrate at work.

35. Hayes also called Hill. Hill informs her that she cannot leave for another 2 hours, and that if she did leave, she would be fired and Mallipudi would be very angry.

36. Mallipudi then called her and told Hayes to take the day off.

37. Michael also informed the HR Director for Transurban, Ms. Rosenberg that Hayes had taken the day off.

38. On May 24, 2019, Hayes asks Michael to clean the refrigerator.

39. Soon after, also on May 24, 2019, Hayes was called into a meeting attended by Hill and Mark Weir (White Male). Hill informed Hayes that she was being terminated and that she is to provide her tools and other work related equipment to Weir. Hayes asked Hill why she was being terminated. Hill told Hayes to place her phone and purse in the common area. Hill then came around her, and asked Hayes to lift her shirt, to confirm that she did not have a recorder on her.

**Transurban Terminates Hayes**

40. Hill then told Hayes that she was being terminated because Michael had gone to Rosenberg and that Rosenberg (Caucasian female), the HR Director at Transurban, recommended that Hayes be terminated because she (Hayes) had requested medical leave on May 10, 2019.

41. When Hayes asked Hill for a severance, he informed her that, "he does not feel like giving it to me."

42. Melissa Christensen a White Female, who was also employed as a Facilities Coordinator, and like Hayes also reported to Hill, was paid a severance for two months or approximately $10,000. Christensen also had numerous write ups and was employed for an approximate period of 5-6 months. Hayes also counselled Christensen on her work performance from October 2018 to November 2018.

43. To the best of our knowledge, Hayes had no performance write ups or verbal warnings and was still denied a severance by the Defendants.

**Hayes is Replaced by a White Male**

44. Upon information and belief, Hayes was then terminated and replaced by a white male: Mark Weir.

**Hayes' claims for unpaid and overtime wages**

45. While employed by the Defendants, Hayes regularly earned overtime. Her hours are recorded on novatime.com.

46. Under the terms of her offer letter, she was paid an hourly rate of $34.61. Her overtime (OT) rate under the MWPCL is $51.75/hour.

47. To that end, her 11/12/2018 – 11/25/2018 pay stub, shows that Hayes earned $207.75 for 4 hours of overtime ($51.75 x 4 hrs = $207.75).

48. Hayes avers that because Tranurban is an Australian company, she had to frequently, if not daily, communicate with Transurban after work hours, from approximately 6 pm to 11 pm eastern standard time. The Defendants too gave her the authority to work from her residence in Maryland.

49. Australia is 14 hours ahead of the east coast of the United States. 6 pm eastern standard time (est) is 8 am in Australia.

50. Hayes upon arriving back to her residence in Bowie, Maryland would then communicate with Transurban in Australia from approximately 6 pm to 11 pm est.  Hayes alleges that she worked an extra 5.5 hours per week for approximately 35 weeks while being employed in Maryland. Defendants never paid Hayes for these overtime hours.

51. Under the MWPCL, Hayes avers that she is owed the following hours from the Defendants.

| Hours Worked | Hourly Wage | OT Wage | Treble Damages under MD Law |
|---|---|---|---|
| 5.5hrs x 35 weeks =192.5 hours | $34.61 | $51.75 | (192.5hrs x $51.75) x 3 =$29,885 |

52. Sometime in January 2019, Hayes has a conversation with Hill regarding the non-payment of her overtime (OT) by Knight FM and Transurban. In this tape recorded conversation[5], Hill states that (i) "OT will become an issue;" (ii) per Transurban, OT is allowed, "if it is necessary'" and (iii) "we are not taking your OT because you never earned it."

53. Hayes disputes Hill's statement that she never earned any overtime. Hayes avers that she would regularly record her overtime hours on novatime.com, only for either Hill or another employee of the Defendants to delete or edit her overtime hours on novatime.com, so as to not pay her, and other hourly employees.

---

[5] A copy of this recorded conversation was provided to opposing counsel on 8/23/2019

54. Hayes alleges that Hill, and other employees of the Defendants had the authority to change/adjust her OT hours in novatime.com without her consent and permission.

55. At the time of her termination, Hayes was also owed $3,809.12 in unpaid vacation pay. Under the MWPCL and its provision for treble damages, Hayes is owed $11,427.36 for her unpaid vacation pay[6].

56. As of the date of this complaint, Hayes is making a claim for unpaid wages in the total and approximate amount of $41,312.36. Discovery may well reveal additional wages and penalties owed to Hayes from the Defendants.

57. Defendants do not have a bona fide dispute for withholding Plaintiff's wages.

58. If upon discovery Plaintiff learns that other employees similarly situated as Hayes, were also denied overtime wages, Plaintiff places the Defendants on notice, that Hayes will amend the complaint to bring a class action complaint for unpaid wages.

59. Finally, prior to the filing of this complaint, the parties attempted to settle this case informally. With the filing of this action, Plaintiff withdraws all her prior settlement demands made before 9/23/2019 to the Defendants.

## PART V. CAUSES OF ACTION.

### COUNT I. SEX & RACE DISCRIMINATION UNDER TITLE VII

60. Plaintiff reincorporates by reference all the allegations above.

61. Title VII prohibits discrimination on the basis of race and sex.

62. Defendants discriminated against the Plaintiff on the basis of her race and sex in violation of Title VII by denying the Plaintiff equal terms and conditions of employment and/or by

---

[6] *See also Cunningham v. Feinberg,* 441 Md. 310 (2012).

terminating her. Defendants also denied her a severance that was made to Caucasian employees.

63. In *Garner v. County of Chesterfield,* 674 F.3d 264 (4th Cir. 2012), the Fourth Circuit held that a female employee had raised a valid claim of discrimination under the civil rights laws, when it offered more severance to her male counterparts. Defendants here denied her any severance while offering it to white employees.

64. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

65. As a consequence of Defendants action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## COUNT II. HOSTILE WORK ENVIRONMENT & HARASSMENT UNDER TITLE VII

66. Plaintiff alleges and incorporates all the paragraphs above.

67. Defendants Knight FM and Transurban created a hostile work environment and/or harassed Plaintiff because of her race and/or sex. The offending conduct was unwelcome, was based on her race and/or sex, was sufficiently severe or pervasive when it altered the

conditions of her employment and created an abusive work environment and was imputable to her employers Knight FM and Transurban.

68. The affirmative defense of *Faragher*[7] and *Ellerth*[8] allows an employer to avoid strict liability for a supervisor's harassment of an employee if no tangible employment action was taken against the employee. Examples of tangible employment action include "discharge, demotion, or undesirable reassignment." *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir.2001).

69. Plaintiff suffered tangible employment actions from her supervisor when she was unable to perform her job because of the harassment, when she was denied her overtime, only to be terminated by Transurban on May 24, 2019.

70. As a result, "vicarious liability is absolute." *Mikels v. City of Durham*, 183 F.3d. 323, 332 (4th Cir. 1999).

71. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

---

[7] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)
[8] *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998)

72. As a consequence of Defendants action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## COUNT III. RETALIATION UNDER TITLE VII

73. Plaintiff alleges and incorporates all the above paragraphs.

74. Plaintiff engaged in protected activity and opposition to practices made unlawful under Title VII while employed by the Defendants.

75. As a result of her protected activities and opposition to practices made unlawful under Title VII, Plaintiff was subjected to an adverse employment action, upto and including termination in May 2019.

76. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by Defendant.

77. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

78. As a consequence of Defendants action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## COUNT IV. RETALIATION UNDER THE AMERICAN DISABILITIES ACT AMENDMENTS ACT OF 2008 (ADAAA)

79. Plaintiff reincorporates by reference all the allegations above.

80. Plaintiff was a disabled individual under the ADAAA. On May 2019, Hayes engaged in protected activities by requesting medical leave for her disabilities. Also on May 2019, Hayes was then terminated by the Defendants only to be replaced by a non-disabled individual Mark Weir.

81. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by Defendants.

82. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

83. As a consequence of Defendants action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## COUNT V. RETALIATION UNDER THE FAMILY MEDICAL LEAVE ACT (FMLA)

84. Plaintiff reincorporates by reference all the allegations above.

85. Under the Family Medical Leave Act (FMLA) it is illegal for the Defendants to discharge or discriminate in any manner, an individual for opposing any practice made unlawful under the FMLA. *See* 29 U.S.C § 2615 (a)(2).

86. This Court analyzes FMLA retaliation claims under the *McDonnell Douglas* framework. *See Fields v. Verizon Servs. Corp.*, 2011 U.S. Dist. LEXIS 103294 * 20 (Sept 13, 2011. D.Md) [quoting] *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541 (4th Cir. 2006). A *prima facie* case for retaliation exists where: (1) the plaintiff engaged in a protected activity; (2) the defendant took adverse action against her; and (3) the adverse action was causally connected to her protected activity. *Id.* (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)).

87. In the present instance, Hayes would have been entitled to FMLA leave for her May 2019 visit to urgent care. The Defendants then terminated Hayes on May 24, 2019, because of her visit to urgent care.

88. This intentional, reckless, and/or willful act by the Defendants constitutes a violation of Plaintiff's statutory rights under the FMLA.

89. By reason of Defendants actions, the Plaintiff is entitled to all legal, monetary liquidated and equitable remedies under the FMLA, including her attorney's fees, plus interest.

## COUNT VI. PAYMENT OF WAGES UNDER THE MARYLAND WAGE PAYMENT & COLLECTION LAWS

90. Plaintiff reincorporates by reference all the allegations above.

91. Under the Maryland Wage Payment Collection Law (MWPCL) Md. Code Ann., Lab. & Empl. § 3-501 *et. seq,*. an employer is to pay their employees all wages due. Failure to pay an employee her bona fide wages due, can result in treble damages under §3-507 of the Act. *See also Cunningham v. Feinberg,* 441 Md. 310 (2012).

92. In the present instance, the Plaintiff alleges that she is owed from the Defendants her unpaid overtime and vacation pay for work and hours performed.

93. Defendants do not have a bona fide dispute concerning her wages owed and due.

94. This intentional, reckless, and/or willful act by the Defendants constitutes a violation of Plaintiff's statutory rights under the Maryland wage laws.

95. By reason of Defendants actions, the Plaintiff is entitled to all legal, monetary liquidated and equitable remedies under the Maryland wage laws including her attorney's fees, plus interest.

## COUNT VII. BREACH OF CONTRACT

96. Plaintiff reincorporates by reference all the allegations above.

97. Plaintiff and the Defendants entered into a contract for wages and employment.

98. At the time of the Plaintiff's termination, the Defendants illegally withheld her wages in violation of this contract for wages and employment.

99. As a consequence of Defendants action, it is additionally liable for attorney's fees and other costs, penalties and interest in pursuit of this litigation.

## COUNT VIII. RACE DISCRIMINATION UNDER SECTION 1981

100. Plaintiff reincorporates by reference all the allegations above.

101. Defendants intentionally discriminated against Plaintiff on account of her race, Black, in violation of 42 U.S.C. § 1981 by denying her equal terms and conditions of

employment, including but not limited to: denial of overtime, and severance pay, only to then terminate her in May 2019, and replace her with a <u>white male.</u>

102. Plaintiff's discrimination and/or adverse employment actions were not experienced by other non-Black employees of the Defendants.

103. Defendants intentionally interfered with Plaintiff's contract of employment because of their discriminatory animus towards her race. Defendants acted in a willful and wanton manner and in callous disregard for the federally-protected rights of the Plaintiff.

104. As a direct and proximate result of this injury from the Defendants, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of her job, the damage to her professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendants and/or agents or employees acting on its behalf, and the stress and anxiety caused by her wrongful termination and resultant financial hardship.

105. As a consequence of Defendants action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Shanon Hayes prays as follows:

a. That this Court enter judgment against the Defendants Knight FM and Transurban;

b. That the Court award Plaintiff damages in the amount equal to all of her accumulated lost wages and benefits, including back pay, front pay and benefits, punitive damages, liquidated damages, reinstatement, compensatory damages for the harm caused by Defendants, including pre-judgment and post judgment interest and any other damages permitted in an amount no less than three hundred thousand dollars ($300,000.00) and/or any other relief the Court and jury deems fit.

c. That the Court also award Plaintiff payment of all her fees, costs and expenses inclusive of attorney's fees, court and expert fees.

## JURY DEMAND

Plaintiff requests a jury trial on all counts.

Respectfully Submitted,

/s/Arinderjit Dhali, Esq.
Bar No. 18631
Dhali PLLC
1629 K. Street. NW. Suite 300.
Washington D.C. 20001
Telephone: (202) 556-1285
Facsimile: (202) 351-0518
ajdhali@dhalilaw.com
*Attorney for Plaintiff Shanon Hayes*
*Monday September 23, 2019*
